**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Nordica USA Corp.
Tecnica USA Corp.

     v.                                Civil No. 06-cv-091-JM

Jens Ole Sorensen (an individual),
Jens Erik Sorensen (as Trustee of
the Sorensen Research and Development
Trust), and Sorensen Research and
Development Trust

**O R D E R**

     Plaintiffs Nordica USA Corp. ("Nordica") and Tecnica USA

Corp. ("Tecnica") brought this action pursuant to 28 U.S.C. §

2201, seeking a declaratory judgment that they are not infringing

defendants' patent and that the patent is invalid.  Defendants

are Jens Ole Sorensen, the inventor of the contested patent

("Ole Sorensen"), Jens Erik Sorensen, the trustee of the Sorensen

Research and Development Trust ("Erik Sorensen"), and the

Sorensen Research and Development Trust ("SRD Trust"), which

holds the ownership interests in the patent (Erik Sorensen and

the SRD Trust are jointly referred to as "SRDT" and are treated

as a single entity for purposes of the pending motions).  The

patent is U.S. Patent 4,935,184 (the "184 patent"), which

pertains to a process for injecting plastic materials into a mold
to produce a thin-walled, hollow plastic product.  Since December
2004, SRDT has contended plaintiffs have used the same injection
molding process covered by the 184 patent to manufacture certain
ski boots, and has sought to enter into a licensing agreement
with plaintiffs for the use of the patented process.  No
agreement was reached, however, and this action commenced in
March 2006.

In lieu of answering the complaint, defendants moved to
dismiss this action for lack of personal jurisdiction or to
transfer the action based on improper venue, pursuant to Fed. R.
Civ. P. 12(b)(2) and (3).[1]  See Document nos. 8 and 9.  Defendant
Ole Sorensen also sought dismissal of the action against him for
failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).
See Document no. 9.  A series of pleadings followed, including
Plaintiff's Amended Motion for Jurisdictional Discovery.  See
Document no. 20.  The matter is before the court on these and
other related motions, which I address seriatim.

---

[1] Defendants ask the court to transfer the action to the
federal district court in the Southern District of California,
where a related case, Jens Erik Sorensen as Tr. of the Sorensen
Research & Dev. Trust v. Tecnica USA, Inc. & Nordica USA, Inc.,
Civ. No. 06-cv-1941 BTM CAB (S.D. Cal. Sept.18, 2006) (the
"California action"), is pending.

<u>Discussion</u>

**1.  Background**

Plaintiffs Nordica and Tecnica are both corporations organized under the laws of New Hampshire, with their respective principal places of business in New Hampshire.  Defendants are not residents of New Hampshire.  Ole and Erik Sorensen reside in San Diego County, California; the SRD Trust's principal place of business is in San Diego, California.  Defendants contend they have insufficient contacts with New Hampshire to enable the federal court here to exercise personal jurisdiction over them consistent with due process.  Plaintiffs counter that defendants' repeated efforts to enter into a license agreement with them, at least, constitute sufficient minimum contacts to justify this court's exercise of personal jurisdiction over them.

In the complaint, plaintiffs assert personal jurisdiction over defendants is appropriate because:

> defendants routinely license the technology
> that is the subject of the '184 patent to large,
> multi-national corporations [in New Hampshire
> and] throughout the world.  Further, counsel for
> defendants have repeatedly contacted plaintiff,
> both directly and through plaintiff's counsel,
> for the express purpose of negotiating a license
> agreement for the technology covered in the '184
> patent and for the purpose of threatening a lawsuit
> against Nordica for alleged infringement of the

3

> '184 patent.. . . That is to say, defendants have,
> at least since 2004, solicited business in New
> Hampshire in the form of proposing a licensing
> arrangement with Nordica.[2]

Compl. ¶ 8.  Defendants argue that even if these allegations are

accepted as true, they fail to establish that defendants either

(1) transacted business in New Hampshire to fall within the reach

of New Hampshire's long arm statute, see New Hampshire Rev. Stat.

Ann. ("RSA") § 510:4, section I (providing for jurisdiction over

non-resident persons), or (2) had sufficient contacts with New

Hampshire to enable the court to exercise its jurisdiction over

them consistent with the due process clause.  See World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 292-93 (1980)

(discussing minimum contacts necessary to render personal

jurisdiction over a nonresident consistent with "traditional

notions of fair play and substantial justice" guaranteed by the

due process clause).

Specifically, defendants make three arguments in support of

their position.  First, they distinguish between the three

defendants, clarifying that the cited correspondence on which

---

[2]Tecnica USA Corp. was added as a plaintiff on October 5,
2006, when an Amended Complaint was filed.  See Document no. 26.
The same allegation of personal jurisdiction is made in the
Amended Complaint.  See id. ¶ 9. The bracketed language, to
include New Hampshire, was added in the Amended Complaint.

plaintiffs rely to invoke personal jurisdiction came only from
the attorney for SRDT, who was not representing Ole Sorensen, and
that Ole Sorensen has had no contacts whatsoever with New
Hampshire, through counsel, an agent, or otherwise.  Ole Sorensen
sold and assigned all his rights in the patent to the SRD Trust
on December 31, 2002, and is neither a beneficiary nor trustee of
that trust.  <u>See</u> Ole Sorensen Aff. ¶¶ 9 and 10 (document no.
9.2).  Ole Sorensen seeks to have this action against him
dismissed, since he has no patent rights and has not asserted any
infringement claim against plaintiffs.  <u>See</u> Fed. R. Civ. P.
12(b)(6).  He also argues that because he has had no contact in
any way with New Hampshire, neither its long-arm statute nor the
due process clause requirement of minimum contacts with the forum
can be satisfied, precluding this court from exercising personal
jurisdiction over him.  <u>See</u> Fed. R. Civ. P. 12(b)(2).

     Second, SRDT argues that only the initial letter, written by
its counsel on December 2, 2004 to Nordica's chief executive
officer, Andy Knittle, requesting Nordica cease and desist its
allegedly infringing manufacturing operations, was sent to New
Hampshire.  SRDT claims that all further correspondence between
the parties was directed at Nordica's counsel in locations

outside of New Hampshire, including Boston, Massachusetts, Washington, D.C. and Montreal, Quebec.  SRDT contends that the initial infringement letter and subsequent offers to enter into a licensing agreement did not rise to the level of transacting business in New Hampshire to invoke its long arm statute.  It also maintains that the mailing of a single cease and desist letter in a patent case does not constitute the requisite minimum contacts with the state to subject a defendant to personal jurisdiction in that forum.

Third, both Ole Sorensen and SRDT argue that even if personal jurisdiction could be exercised over them, New Hampshire is the wrong venue for this action under 28 U.S.C. § 1391(b), again because they have insufficient contacts with the state. They further argue that plaintiff bears the burden of proving otherwise.  Defendants request this action be transferred to the United States District Court for the Southern District of California, under the authority provided courts in 28 U.S.C. § 1406(a) (allowing court "in the interest of justice" to transfer case to a district in which it could have been brought).

Plaintiffs respond that personal jurisdiction may properly be exercised over defendants based either on specific or general

6

jurisdiction, or based on a "stream of commerce" theory of jurisdiction.  Plaintiffs argue defendants are in the business of licensing their technology, which subjects them to jurisdiction wherever the licensed technology is being used.  They assert first that defendants' contact with Nordica alleging Nordica was infringing the '184 patent gives rise to specific jurisdiction. Next plaintiffs contend that the SRD Trust, as well as several other corporate entities which defendants have created, have licensed technology with many corporations that either are located or are doing business in New Hampshire, which shows defendants' systematic and continuous contacts with New Hampshire for purposes of general jurisdiction.  Finally, plaintiffs argue that the licensees who either have their principal place of business in New Hampshire or are doing business in New Hampshire by selling products which incorporate the licensed technology demonstrate that defendants have put the '184 patent in the "stream of commerce" here.

For all these reasons, plaintiffs maintain that it is reasonable and fair for defendants to be subject to suit in this court.  To the extent they have not made a prima facie case of personal jurisdiction, plaintiffs seek additional discovery to

demonstrate it exists.  Because the requested discovery may
bolster plaintiffs' jurisdiction claim, I address that motion
first before turning to defendants' motions to dismiss.

    **2.   Plaintiffs' Amended Motion for Jurisdictional
       Discovery (document no. 20), and Plaintiffs'
       Addendum to Motion for Jurisdictional Discovery
       (document no. 34)**

       a.  Minimum Contacts Requirement

The due process clause requires that a defendant be given
adequate notice of a suit against him and be subject to the
personal jurisdiction of the forum court in order for a judgment
against him to be effective.  See World-Wide Volkswagen, 444 U.S.
at 291 (describing due process limits on judicial power).  It
limits a court's ability to exercise jurisdiction over an out-of-
state defendant to circumstances where the defendant has directed
his activities at the forum state, so that sufficient "minimum
contacts" with the forum exist to render it both reasonable and
fair to subject the defendant to suit there.  See id. at 291-92
(citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).
Personal jurisdiction may be either "general" or "specific,"
depending on the type of contact with the forum.  See Trintec
Indus. v. Pedre Promotional Prods., 395 F.3d 1275, 1279 (Fed.

Cir. 2005) (citing authority).

General jurisdiction exists over a defendant whose contacts with the forum are so "'continuous and systematic'", <u>see</u> <u>id.</u> (quotation omitted), that it is "'reasonable . . . to require the corporation to defend the suit'" even if the litigation is not related to those contacts.  <u>See</u> <u>World-Wide Volkswagen</u>, 444 U.S. at 292 (quoting <u>Int'l Shoe</u>, 326 U.S. at 317).  Specific jurisdiction exists when the contacts are only "isolated and sporadic," as long as the litigation results from injuries that arise from or relate to those contacts.  <u>See</u> <u>Trintec Indus.</u>, 395 F.3d at 1279 (quoting <u>LSI Indus. v. Hubbell Lighting, Inc.</u>, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-72 (1985)).  Under either circumstance, defendant is deemed to have "'fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'"  <u>Burger King</u>, 471 U.S. at 472 (quoting <u>Shaffer v. Heitner</u>, 433 U.S. 186, 218 (1977)).  Plaintiffs argue here that the requested discovery will show defendants' contacts with New Hampshire give rise to both specific and general jurisdiction.

9

b. Standard of Review

Although the issue of personal jurisdiction is guided by the law of the Federal Circuit rather than the First Circuit,  see Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006), *reh'g and reh'g en banc den.*, 2006 US App. LEXIS 14551 (Fed. Cir. May 30, 2006) (explaining that a declaratory judgment action for non-infringement is "intimately related to patent law" and therefore is governed by Federal Circuit law), plaintiffs' discovery request is resolved following the law of the First Circuit.  See Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005) (citing authority).  Under First Circuit law, if defendants move to dismiss for lack of personal jurisdiction, plaintiffs may be entitled to a "modicum of jurisdictional discovery" to establish facts that demonstrate why jurisdiction may properly be exercised over defendants.  See Negrón-Torres v. Verizon Commc'ns. Inc., No. 06-1147, __ F.3d __, 2007 WL 431165, at *7 (1st Cir. Feb. 9, 2007); see also Fed. R. Civ. P. 12(b)(2). Plaintiffs now seek precisely such information.  See Document Nos. 20 and 34.  As a preliminary matter, plaintiffs also filed a "Motion for Leave to File a Reply Memorandum," see document no.

24, which is granted, and the materials submitted therein are considered in resolving the pending discovery motions (the three documents related to plaintiffs' request for jurisdictional discovery, document nos. 20, 24 and 34, are hereinafter jointly referred as one "motion").

It is within the trial court's discretion whether or not to grant plaintiffs' motion for jurisdictional discovery. See U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001) (explaining the district court's broad discretion).  The motion must be "timely and properly supported," must proffer a "colorable claim" for jurisdiction, and must "present facts to the court which show why jurisdiction would be found if discovery were permitted."  Id. at 625, 626.  Plaintiffs must specify the type of evidence they think they will find and provide detailed descriptions of any "'additional pertinent avenues of inquiry' that [they] hope[] to pursue."  Id. at 626 (quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973).  "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request."  Id. (citing Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 (1st Cir. 1992)).

11

Finally, even when a plaintiff has been diligent and has properly supported a colorable claim for jurisdiction, the district court may still conclude that discovery is not required and be within its discretion in denying the request.  See id. at 625-26.

   With these guiding principles in mind, I turn to the three bases for jurisdiction plaintiffs have alleged to determine whether their motion for jurisdictional discovery proffers facts that demonstrate, or describes "pertinent avenues of inquiry" that will lead to facts that will demonstrate, the requisite minimum contacts with New Hampshire to allow this court to exercise personal jurisdiction over defendants consistent with the due process clause.[3]  In making that assessment, I must apply

_____

   [3]Whether or not plaintiffs have presented a "colorable claim" of personal jurisdiction over defendants involves a two-step inquiry, looking first at New Hampshire's long-arm statute, and second at the limits of the due process clause.  See Trintec Indus., 395 F.3d at 1279 (explaining how personal jurisdiction is determined in a patent infringement case); see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) (describing test for exercise of personal jurisdiction over a non-consenting, out-of-state defendant).  Under New Hampshire law, the reach of the long-arm statute is co-extensive with constitutional due process requirements, see Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co., No. 2006-144, __ N.H. __, 2006 WL 3741848, at *2 (N.H. Dec. 21, 2006) (state's long-arm statute permits jurisdiction to the extent permissible under the federal due process clause), causing the long-arm analysis to collapse into the due process analysis and rendering them one and the same.  See Trintec Indus., 395 F.3d at 1279 (the question becomes whether an exercise of personal jurisdiction would offend

Federal Circuit law.  <u>See</u> <u>Commissariat a l'Energie Atomique</u>, 395
F.3d at 1323 (determining relevance of requested discovery in a
patent infringement case based on Federal Circuit law).

        Before proceeding to that substantive analysis, I will
address defendants' argument that the discovery motion should be
dismissed as untimely.  Since the request for jurisdictional
discovery was made before any ruling on the motions to dismiss,
in fact it was first asserted in their objection to the motions
to dismiss, and because plaintiffs bear the burden of proving
personal jurisdiction when defendants file a motion to dismiss, I
find plaintiffs have diligently sought the discovery and decline
to deny the motion on this basis.  <u>See</u> <u>id.</u> (reversing denial of
discovery where plaintiff did not fully brief the issue but
requested discovery in its opposition to the motion to dismiss
and reiterated that request both at oral argument and in a motion
for reconsideration); <u>cf.</u> <u>Barrett v. Lombardi</u>, 239 F.3d 23, 28
(1st Cir. 2001) (affirming denial of jurisdictional discovery
where not sought until after adverse judgment entered).

---

due process); <u>Red Wing Shoe</u>, 148 F.3d at 1358 (same).
Accordingly, the parties here correctly argue only whether
defendants have the requisite minimum contacts with New Hampshire
to satisfy the due process clause.

### c.  Specific Jurisdiction

Plaintiffs first claim this court has specific jurisdiction over defendants based on defendants' contacts with them relating to their allegedly infringing use of the '184 patent.  Plaintiffs argue the cease-and-desist letters combined with defendants' "exclusive and/or ongoing relationships with licensees or distributors doing business in the state," give rise to specific jurisdiction.  <u>See</u> Document no. 20 at 6; <u>see</u> <u>also</u> Document no. 24 at 5.  Plaintiffs assert that some licensing agreements of which they already are aware contain confidentiality and indemnity provisions.  They now seek disclosure of all defendants' license agreements to determine the extent to which defendants exert control over the operations of these licensees to establish defendants' contacts with New Hampshire.  In support of their argument, plaintiffs cite <u>Breckenridge Pharm.</u>, 444 F.3d at 1361, <u>Genetic Implant Sys. v. Core-Vent Corp.</u>, 123 F.3d 1455, 1457-59 (Fed. Cir. 1997), and <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1542-43 (Fed. Cir. 1995).

To determine whether this court has specific jurisdiction over defendants, plaintiffs must demonstrate that "(1) the defendant purposefully directed its activities at residents of

the forum, (2) the claim arises out of or relates to those
activities, and (3) assertion of personal jurisdiction is
reasonable and fair."  Breckenridge Pharm., 444 F.3d at 1361-62.
Only if plaintiffs meet their burden of proving the first two
elements does the burden then shift to defendants to prove the
third element.  See id. (referring to the five factor test of
reasonableness set forth in Burger King, 471 U.S. at 476-77); see
also Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1202
(Fed. Cir. 2003) (explaining the first two prongs relate to the
minimum contacts inquiry while the third factor corresponds with
the fair play and substantial justice requirement).  Plaintiffs
have failed to meet even the "colorable claim" threshold for
specific jurisdiction, however, and their argument for
jurisdictional discovery to make a prima facie showing is
patently unpersuasive.

It is well-settled that cease-and-desist letters and other
attempts to license the patent at issue, "without more" are not
sufficient contacts to satisfy the due process clause.  See id.
at 1363-66 (surveying Federal Circuit law regarding cease-and-
desist letters); see also Red Wing Shoe, 148 F.3d at 1360-61
(explaining how letters regarding possible infringement may be

substantially related to the cause of action but subjecting a
defendant to suit for merely protecting his patent rights is
contrary to "fair play and substantial justice").  Accordingly,
none of SRDT's correspondence, by letter, email or telephone,
with Nordica can give rise to specific jurisdiction.  Apparently
recognizing this flaw in their jurisdictional argument,
plaintiffs seek discovery of licensing agreements to provide the
requisite "other activities" directed at the forum and done in
conjunction with the cease-and-desist letters which together can
constitute "minimum contacts" to comport with due process.  <u>See</u>
<u>id.</u> at 1366.

     The cases plaintiffs rely on to support their position that
they are entitled to "close examination of the license agreement"
are inapposite.  <u>Id.</u>  In each of those cases, the patentee had an
exclusive arrangement with its licensee or distributor.  <u>See</u> <u>id.</u>
(exclusive license with company that conducted business in
forum); <u>see</u> <u>Genetic Implant Sys.</u>, 123 F.3d at 1457 (exclusive
distribution agreement); <u>see</u> <u>also</u> <u>Akro</u>, 45 F.3d at 1542-43
(exclusive license agreement).

          Where a defendant-licensor has a relationship
          with an *exclusive* licensee headquartered or
          doing business in the forum state, the inquiry
          requires close examination of the license agreement.

16

> In particular, our case law requires that the
> license agreement contemplate a relationship beyond
> royalty or cross-licensing payment, such as granting
> both parties the right to litigate infringement
> cases or granting the licensor the right to
> exercise control over the licensee's sales or
> marketing activities.

Breckenridge Pharm., 444 F.3d at 1366 (emphasis added).  While

plaintiffs argue they can only discover the scope of defendants'

obligations in New Hampshire if they are allowed to examine the

license agreements, the premise of the "close examination"

inquiry is an exclusive arrangement.  Based on the motion for

jurisdictional discovery alone, defendants clearly do not have

any exclusive arrangement with any company in New Hampshire.

      To the contrary, based on the submissions before the court,

defendants have licensed the technology covered by the '184

patent to several different companies engaged in very diverse

business activities.  As alleged, SRDT has licensed the '184

patent to at least the following companies, all of which are

doing business in New Hampshire:  Atomic Ski USA, see Document

no. 12.3, Aff. of Jamie N. Hage, ¶ 21; DaimlerChrysler AG, see

id. ¶¶ 24 and 28; Garmin International, Garmin USA, Inc., and The

Stanley Works, see id. ¶¶ 29-31.  The fact that SRDT and Ole

Sorensen have licensed the '184 patent to at least these five

companies which do business in New Hampshire, and which are all
involved in distinct product markets, selling diverse products,
wholly undermines plaintiffs' contention that defendants
"purposefully directed" their activities at New Hampshire by
creating some type of exclusive licensee or distributor
relationship to market the '184 patent here.  See Red Wing Shoe,
148 F.3d at 1362 (explaining how the patentee/licensor's, not the
licensee's, contacts with the forum is the critical inquiry).
Defendants simply have not made any exclusive arrangement for the
use of the patented technology here, which has been the basis for
finding specific jurisdiction under Federal Circuit law.  See
Breckenridge Pharm., 444 F.3d at 1366.  It is "'the exclusivity
of [the] license agreement . . . [that] created continuing
obligations' between the patentee and the forum and 'eliminated
any possibility of [the patentee's] entering into any type of
licensing arrangement' with the declaratory judgment plaintiff."
Red Wing Shoe, 148 F.3d at 1362 (quoting Akro, 45 F.3d at 1546,
where the declaratory judgment plaintiff was a competitor with
the defendant patentee's exclusive licensee).

Additional evidence of other licensing agreements with more
companies would further undercut plaintiffs' argument for

specific jurisdiction.  The exclusivity of the licensing
arrangement shows how the defendant/patentee/licensor
"purposefully direct[s] activities at [the forum] within the
meaning of the due process inquiry." Breckenridge Pharm., 444
F.3d at 1365; cf. Red Wing Shoe, 148 F.3d at 1361–62 (no personal
jurisdiction where patentee had multiple license agreements).
Because plaintiffs motion for jurisdictional discovery seeks to
discover potentially innumerable licensing agreements with
unknown companies, they have failed to allege specific contacts
that would show that defendants purposefully directed their
activities at New Hampshire for purposes of establishing specific
jurisdiction.  See Swiss Am. Bank, 274 F.3d at 626 (failure to
allege specific contacts relevant to establishing personal
jurisdiction justifies denying the discovery request).
Plaintiffs have failed to make a colorable claim for specific
jurisdiction and their argument for jurisdictional discovery
simply founders on the facts.

        d.  General Jurisdiction

    Plaintiffs next seek to establish general jurisdiction over
defendants, asserting that defendants are in the business of
licensing technology and have created "systematic and continuous"

contacts with New Hampshire by entering into so many licensing agreements with corporations which do business here.  As part of their general jurisdiction argument, plaintiffs also contend that personal jurisdiction exists in the forum because defendants have put the '184 patent into the "stream of commerce" here through the sales activities of its several licensees.  Plaintiffs list at least 12 large, multi-national corporations which employ the technology covered by the '184 patent to manufacture products which are sold throughout New Hampshire.  <u>See</u> Document no. 12.1 at 11 and 18 (listing companies).  Plaintiffs also identify several "related companies" that involve either the defendants or the '184 patent, arguing the licensing agreements of these related companies will further demonstrate defendants' systematic and continuous contacts with New Hampshire.  <u>See</u> Document no. 20 at 7; <u>see</u> <u>also</u> Document no. 12.1 at 8 and 17–18.  Plaintiffs request unredacted copies of these several licensing agreements, to determine the scope of the indemnity and confidentiality provisions and discover any additional ongoing obligations in the licensing relationships.  <u>See</u> Document no. 24 at 5.

Plaintiffs have failed to demonstrate how any of these other licensing relationships would assist in establishing personal

jurisdiction over defendants if discovery of them were permitted. See Swiss Am. Bank, 274 F.3d at 626 (requiring detailed descriptions of the types of contacts expected to be found). Plaintiffs focus on the numerous products sold in New Hampshire, which implement the technology covered by the '184 patent, as the basis for establishing general jurisdiction over defendants.  Yet the sales of products that are made by companies using the licensed technology are not contacts which can be attributed to defendants.  Plaintiffs argue these licensing agreements will provide evidence of the pervasive and extensive contacts with New Hampshire that are needed to give rise to general jurisdiction, but that argument does not withstand analysis.

     First, as discussed above, plaintiffs do not, nor could they in good faith based on the submissions before the court, argue that those license agreements are exclusive or somehow create an agency relationship in which the multiple licensees are acting on defendants' behalf, so that the sales can somehow be attributable to defendants.  Plaintiffs, in fact, represent that several brand name products of at least 12 multinational corporations allegedly utilize the '184 patent technology, including such diverse products as vehicles, navigation and communication equipment,

21

consumer and industrial tools, and ski boots.  <u>See</u> Document no.
12.1 at 11–12.  The diversity of those products demonstrates how
the '184 patent covers technology that is used in the
manufacturing process of products but is not a tangible product
itself.

Second, the "product" sold in the license agreements is a
"covenant not to sue."  <u>Red Wing Shoe</u>, 148 F.3d at 1362
(declining to find licensees as "distribution channels").
Plaintiffs simply are giving their licensees the right to use the
patented technology without the risk of being sued for that use.
<u>See</u> <u>id.</u> (distinguishing a license agreement from a shoe).  Since
the "covenant not to sue," which is the product defendants are
selling, is not a product sold in the stream of commerce, the
plaintiffs' reliance on that theory of jurisdiction is misplaced.
<u>See</u> <u>id.</u>  To the extent defendants' licensees sell products that
have been manufactured using the injection mold process covered
by the '184 patent, it is the licensees' products, not
defendants' products, that are in New Hampshire's stream of
commerce.  <u>See</u> <u>id.</u> (patentee/ licensor had no control over its
licensee's sales activities).

Third, the fact that the identified licensees may have

22

extensive contacts with New Hampshire cannot be attributed to defendants for purposes of establishing defendants' contacts with the forum.  See id. at 1361.  "In simple terms, doing business with a company that does business in [New Hampshire] is not the same as doing business in [New Hampshire].  Indeed, . . . the Supreme Court has made clear that contacts resulting from the 'unilateral activity of another party or third person' are not attributable to a defendant."  Id. (quoting Burger King, 471 U.S. at 475).

Fourth, the existence of defendants' "related companies" and their licensing activity is wholly irrelevant to whether or not SRDT and Ole Sorensen have had systematic and continuous contacts with New Hampshire.  The related companies are distinct legal entities, whose individual contacts with New Hampshire are relevant only to its possible jurisdiction over those companies.  See Negrón-Torres, 2007 WL 431165 at *6 (upholding corporate form to protect a parent corporation from jurisdiction in the forum where its subsidiary does business); see also Fiacco v. Sigma Alpha Epsilon Fraternity, No. Civ. 1:05-145-GZS, 2006 WL 890686, at *8 (D. Me. March 31, 2006) ("even close affiliation" between in-state and out-of-state corporations does not justify

jurisdiction over out-of-state company based on in-state company's contacts).  "There is a presumption of corporate separateness," <u>Negrón-Torress</u>, 2007 WL 431165 at *6, and nothing in the pleadings before me indicates any basis for assuming otherwise.

Finally, plaintiffs suggest the revenue generated from the licensing agreements is discoverable, because that revenue has enabled defendants to propagate their business of licensing technology (through both the SRD Trust and the related companies) and, thereby, to create pervasive contacts with New Hampshire. <u>See</u> Document no. 24 at 7-8.  In support of this argument, plaintiffs cite <u>Genetic Implant</u>, 123 F.3d at 1458 and <u>LSI Indus.</u>, 232 F.3d at 1375.  Again those cases are inapposite.  The revenue generated from sales in both those cases was pertinent to the discovery analysis because the sales were directly attributable to the defendants.  <u>See</u> <u>id.</u> at 1375 (finding millions of dollars of sales through a broad distribution network created continuous and systematic contacts); <u>see</u> <u>also</u> <u>Genetic Implant</u>, 123 F.3d at 1458 (exclusive distributor sold a substantial dollar amount of defendant's dental implant product through the market network defendant had created).  By contrast, even if the licensing

agreements provided for royalty income to defendants, the receipt of that revenue is a "financial benefit[] accruing to the defendant from a collateral relation to the forum." <u>World-Wide Volkswagen</u>, 444 U.S. at 299.  Accordingly, any financial benefit defendants derive from the license agreements is irrelevant to the jurisdictional inquiry.  <u>See</u> <u>Red Wing Shoe</u>, 148 F.3d at 1362 (declining to find contact with the forum based on royalty income to patentee/licensor).

Plaintiffs want unredacted copies of any and all license agreements entered into by defendants and all of the related companies, involving the '184 patent as well as innumerable other patents issued to Ole Sorensen.  That request amounts to little more than a fishing expedition.  Plaintiffs have failed to persuade me how those licensing agreements will better establish defendants' systematic and continuous contacts with New Hampshire to justify this court's exercise of personal jurisdiction over defendants for a cause of action unrelated to those contacts. That is a difficult showing, which plaintiffs simply have not made.

Accordingly, I conclude that plaintiffs' motion for jurisdictional discovery (documents no. 20, 24 and 34) is denied.

3.   **Defendants' Motions to Dismiss or Transfer for
Lack of Personal Jurisdiction and Improper
Venue Pursuant to Fed. R. Civ. P. 12(b)(2) and (3)
and Failure to Sate a Claim for Relief Pursuant
to Fed. R. Civ. P. 12(b)(2)(6) (document nos. 8 and 9)**

Since plaintiffs have failed to make even a colorable claim
for jurisdiction to justify the pursuit of jurisdictional
discovery, it readily follows that they also have not made a
prima facie showing that personal jurisdiction over defendants
exists to overcome defendants' motions to dismiss.  See Silent
Drive, 326 F.3d at 1201 (stating deferential standard of review
at motion to dismiss stage before discovery).  Rather than grant
defendants' motions to dismiss for lack of personal jurisdiction,
however, I find it more judicially economical to transfer this
matter to the United States District Court for the Southern
District of California where several related cases, including the
California action, are pending.  See 28 U.S.C. § 1406(a); see
also Trintec Indus., 395 F.3d at 1280 ("venue in a patent action
against a corporate defendant exists wherever there is personal
jurisdiction").  Based on very similar facts, but involving Head
USA, Inc. rather than Nordica or Tecnica, the United States
District Court for the District of Connecticut transferred an
action alleging infringement of the '184 patent to the Southern

26

District of California.  See Head USA, Inc. v. Sorensen, No.
3:06cv983 (MRK), 2006 WL 3703646, at *5 (D. Conn. Dec. 13, 2006).
I adopt the reasoning of the court in Head and order this action
be transferred to the United States District Court for the
Southern District of California.  See id.

Defendant Ole Sorensen also moved to dismiss the action
against him for failure to state a claim.  See Fed. R. Civ. P.
12(b)(6).  Even generously construing the allegations in the
complaint as true and indulging all reasonable inferences in
plaintiffs' favor as I am required to do at this preliminary
stage of review, see Silent Drive, 326 F.3d at 1201, plaintiffs
have not stated a claim against Ole Sorensen.  Plaintiffs'
dispute is with the validity of the '184 patent.  Based on the
undisputed facts submitted, Ole Sorensen no longer holds any
ownership interest in or rights to the '184 patent; and neither
he nor his counsel was involved in communicating the alleged
infringement or seeking enforcement of the '184 patent through a
negotiated license agreement.  There simply is no actual or
substantial controversy between Ole Sorensen and plaintiffs which
might be resolved in this declaratory judgment action.  See
MedImmune, Inc. v. Genentech, Inc., __ U.S. __, 127 S. Ct. 764,

27

777–78 (2007) (discussing Article III's case and controversy requirement for purposes of determining when a licensee can seek declaratory judgment that a patent is invalid).  Because there is no justiciable controversy between plaintiffs and Ole Sorensen, Ole Sorensen's motion to dismiss for failure to state a claim against him is granted.  See Fed. R. Civ. P. 12(b)(6).

Accordingly, I deny as moot SRDT's motion to dismiss for lack of personal jurisdiction and grant SRDT's motion to transfer this action to the United States District Court for the District of Southern California (document no. 8).  See Fed. R. Civ. P. 12(b)(2) and (3).  I also grant Ole Sorensen's motion to dismiss for failure to state a claim (document no. 9).

### 4.  Remaining Pending Motions (documents no. 28 and 37)

Two final issues remain.  First, plaintiffs moved for leave to file a "Reply Memorandum of Law to Defendants' Opposition to Plaintiffs' Addendum for Jurisdictional Discovery" (document no. 37), which motion is denied.  The court has been provided with ample material to make a thorough assessment of the arguments pertaining to the issue of personal jurisdiction and the evidence in support thereof.  Further pleading on the subject is not

necessary.  Second, plaintiffs filed a "Motion for Entry of Default Judgement" (document no. 28).  In light of the decision to transfer this matter to United States District Court for the Southern District of California, this motion is denied as moot.

Conclusion

As explained in detail above, the pending motions are disposed of as follows:

    Document no. 8 – granted in part, to transfer the action,
        and denied in part, as moot;
    Document no. 9 – granted;
    Document no. 24 – granted;
    Documents no. 20 and 34 – denied;
    Document no. 28 – denied as moot;
    Document no. 37 – denied.

The Clerk is directed to transfer this case to the United States District Court for the Southern District of California and to close this file.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  February 23, 2007
cc:    Courtney Quinn Brooks, Esq.
       Jamie N. Hage, Esq.
       J. Michael Kaler, Esq.
       Melody A. Kramer, Esq.
       Paul Lanagan, Esq.
       Elizabeth K. Rattigan, Esq.